# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FINANCIAL INDUSTRY
ASSOCIATION, G&G HOLDINGS, INC.,
RICHARD GOBLE and THE GOBLE
FIRST REVOCABLE FAMILY TRUST
MAY 13, 1999,**

     **Plaintiffs,**

**v.**                  **Case No:   6:10-cv-408-Orl-40KRS**

**TIMOTHY WARD and BRUCE
BLATMAN,**

     **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **FEDERAL DEFENDANTS' MOTION TO DISMISS (Doc. No. 134)** |
| **FILED:** | **June 20, 2014** |

**I.  BACKGROUND.**

  Plaintiff Richard Goble was the director of North American Clearing, Inc. ("NACI"), a stock-brokerage firm.  On May 27, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against NACI, Goble, Bruce B. Blatman (NACI's president) and Timothy J. Ward (NACI's financial and operations principal) alleging that they violated securities laws, including the Exchange Act, and other legal requirements by improperly selling customer money market funds to pay NACI's business expenses resulting in a capital deficiency for NACI.  *SEC v. N. Am.*

*Clearing, Inc.*, Case No. 6:08-cv-829-Orl-35KRS, Doc. No. 1 (M.D. Fla. May 27, 2008) (the "*SEC Case*"). The SEC filed an *ex parte* motion for a temporary restraining order and an emergency motion to appoint a receiver for NACI, which motions were granted. *Id.*, Doc. Nos. 2, 6, 7, 12. Peter Anderson, Esq., was appointed as the Receiver. *Id.*, Doc. No. 12. Anderson retained lawyers with Sutherland, Asbill & Brennan, LLP (Keith J. Barnett, Michael K. Freedman and Olga Greenberg) to represent him in his capacity as Receiver.

Thereafter, Blatman, Ward and NACI, through Receiver Anderson, agreed to entry of injunctions against them. *Id.*, Doc. Nos. 41-2, 42-2, 60-2, 62, 63, 64, 111-2, 113, 131. Final judgments were entered against Blatman, Ward and NACI. *Id.*, Doc. Nos. 68, 160, 161, 280. Goble continued to litigate the case.

On July 28, 2008, the Securities Investor Protection Corporation ("SIPC")[1], represented by attorneys Josephine Wang and Christopher H. LaRosa, filed an application for entry of a protective decree and requested the appointment of Robert N. Gilbert, Esq., as Trustee, and the law firm Carlton Fields, P.A. (specifically attorneys Franck D. Chantayan and David Hywel Leonard) as Trustee's counsel. This application operated as an automatic stay of the litigation as to NACI under the bankruptcy code. *Id.*, Doc. No. 71. The application was granted on July 28, 2008, and Trustee Gilbert was appointed for the liquidation of the business of NACI. *Id.*, Doc. No. 75. As of the writing of this Report and Recommendation, it appears that the bankruptcy proceeding remains pending. *SIPC v. N. Am. Clearing, Inc.*, Adversary Proceeding No. 6:08-ap-145-KSJ (Bankr. M.D. Fla.).

---

[1] SIPC was created by the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa, *et seq.* It is a nonprofit corporation that is not an agency of the United States. *Id.* § 78ccc (1). Its purpose is to provide financial relief to the customers of failing broker-dealers with whom the customers had left cash or securities on deposit. *SIPC v. Barbour*, 421 U.S. 412, 413 (1975).

In March and April 2010, Goble filed motions in the *SEC Case* seeking permission to sue Receiver Anderson, Trustee Gilbert and their respective attorneys and agents in separate litigation as required by *Barton v. Barbour*, 104 U.S. 126, 127 (1881).  *SEC Case*, Doc. Nos. 204, 208.  The Court denied the motions.  *Id.*, Doc. No. 209.

The Court conducted a bench trial on the SEC's claims against Goble individually.  *Id.*, Doc. Nos. 250-54.  On April 27, 2011, the Court entered a Bench Trial Opinion.  *Id.*, Doc. No. 260.  The Court found that Goble violated and aided and abetted violations of the Exchange Act (Counts II, IV and V of the *SEC Case* Complaint).  *Id.* at 22, 24, 26.  The Court wrote: "It is clear from the evidence of record, that North American had financial problems and Defendant Goble and North American's executives made a substantial effort to conceal it."  *Id.* at 18.  The Court entered a permanent injunction against Goble and ordered him to pay a civil penalty of $7,500.00.  *Id.* at 29-31.  Final judgment was entered on April 27, 2011.  *Id.*, Doc. No. 261.

Goble appealed the judgment.  On May 29, 2012, the United States Court of Appeals for the Eleventh Circuit affirmed the finding that Goble aided and abetted violations of the Exchange Act, reversed the decision in other respects, and remanded the case for reconsideration of the scope of the injunction.  *Id.*, Doc. No. 269.  On April 3, 2013, the Court entered a revised form of injunction.  *Id.*, Doc. No. 282.  Goble has filed a motion for relief from the judgment, which is pending as of the writing of this Report and Recommendation.  *Id.*, Doc. No. 289.

Meanwhile, on March 16, 2010, Goble, Financial Industry Association, Inc. ("FIA"), G&G Holdings, Inc. ("G&G") and the Goble First Revocable Family Trust May 13, 1999 ("Trust"), through counsel, filed a civil complaint in the present case naming the SEC, the Financial Industry Regulatory Authority, Inc. ("FINRA"), the Depository Trust and Clearing Corporation ("DTCC"), Mary Schapiro (the Chairman of the SEC), Grace Vogel (FINRA Vice President of Member

Regulation), Larry Thompson (DTCC managing director and general counsel), Ward, Blatman, SEC examiner George Franceschini, Sam Luque, Jr. (an expert witness for the Receiver and the SEC in the *SEC Case*)[2], and SIPC as Defendants. Doc. No. 1. The Plaintiffs alleged that all Defendants tortiously interfered with their business relationships (Count I) and committed gross negligence (Count IV); that the SEC and SIPC engaged in abuse of process (Count II); and, that FINRA, the SEC, Schapiro, Vogel and Luque defamed the Trust and Goble (Count IV).[3] Subsequently, the Plaintiffs voluntarily dismissed their claims against Blatman, Ward, Franceschini and the SEC. Doc. No. 18.

On May 18, 2011, FIA, G&G, the Trust and Goble, through counsel, filed a new case against the United States of America, SEC, SIPC, Blatman, Ward, Financial Industry Technical Services, Inc. ("FITS"), Henry Lange (Chief Executive Officer of FITS), John Rizzo, Josephine Wang and Christopher LaRosa (attorneys for SIPC). *Fin. Indus. Ass'n v. SEC*, Case No. 6:11-cv-825-Orl-40KRS (the "*825 Case*"), Doc. No. 2 (M.D. Fla. May 18, 2011). Plaintiffs alleged that all Defendants committed negligence, gross negligence and abuse of process by presenting false information to the courts in the *SEC Case* and the resulting bankruptcy proceedings (Counts I, II and III) and conspired to do so (Count IV), and that unidentified Defendants wrongfully converted equipment, supplies and proprietary and confidential information belonging to FIA and G&G (Count V).[4]

---

[2] *See SEC Case*, Doc. No. 157.

[3] There are two causes of action labelled Count IV and no cause of action labelled Count III.

[4] Count V alleges that "*Plaintiffs* intentionally stole and appropriated to themselves computer equipment, office supplies, and proprietary and confidential information belonging to G&G Holdings and the Financial Industry Association." *825 Case*, Doc. No. 2 ¶ 69 (emphasis added).

On June 4, 2013, counsel for Plaintiffs was allowed to withdraw from the *825 Case*. *825 Case*, Doc. No. 25. However, counsel for Plaintiffs was only permitted to withdraw as counsel for Goble in the present case because FIA, G&G and the Trust could not appear and be heard in the case except through counsel of record. Doc. No. 53.

On July 2, 2013, the Court consolidated the present case and the *825 Case* and designated the present case as the Lead Case. Doc. No. 66.

Meanwhile, Goble, proceeding *pro se*, filed a motion for leave to file an amended complaint.[5] Doc. No. 57. He proposed to name only himself as Plaintiff, individually and as assignee of the claims of FIA, G&G, the Trust and NACI (collectively the "Goble Entities"). Doc. No. 57-1. He proposed to name as Defendants the United States of America, the SEC, SEC lawyer Brian Barry, Franceschini, Luque, Jr., Blatman, Ward, SIPC and its attorneys in the *SEC Case*, FITS and its principal (Lange) and employee (Rizzo) (agents of the Trustee),[6] Glassratner Advisory and Capital Group, LLC, Thomas Santoro, Kapila and Company, Soneet R. Kapila, Trustee Gilbert and his attorneys, and Receiver Anderson and his attorneys. The Court denied the motion because the SEC and its employees were immune from suit, Goble had not shown he had obtained leave of Court to sue Trustee Gilbert, Receiver Anderson or their attorneys and agents, and other causes of action failed to state claims on which relief could be granted. Doc. Nos. 67, 70. The Court gave Goble "one final opportunity" to file a renewed motion for leave to file an amended complaint that corrected the deficiencies identified by the Court. Doc. No. 70 at 9. The Court specifically ordered Goble not to assert certain claims and not to name certain

---

[5] Goble asked for leave file a fourth amended complaint. Doc. No. 57. It appears to the Court that Goble considered the original complaints in the *825 Case* and this case to be the first two complaints and the amended complaint in the *825 Case* to be the third amended complaint. *See infra* note 7.

[6] *See SEC Case*, Doc. No. 214-1.

individuals and entities as Defendants in a proposed amended complaint.  *Id.* at 10.  In a separate order, the Court indicated that if Goble did not file a motion for leave to file an amended complaint that complied with the Court's orders, the case would proceed on the amended complaint in the *825 Case*.  Doc. No. 75 at 2 n.1.[7]

On December 2, 2013, Goble, proceeding *pro se*, filed a motion for leave to amend his complaint.  Doc. No. 76.  On December 9, 2013, this motion was denied because Goble proposed to assert claims that the Court had ordered him not to assert and to name Defendants that the Court ordered him not to include in an amended complaint.  Doc. No. 77.

On January 23, 2014, Goble filed his last motion for leave to file an amended complaint. Doc. No. 78.  The motion for leave to amend was denied as untimely.  Doc. No. 79. Accordingly, the amended complaint in the *825 Case* became the operative complaint.  *825 Case*, Doc. No. 2 (the "Operative Complaint").

Several of the Defendants have filed motions to dismiss.  Doc. Nos. 102, 103, 108, 110, 134.  Goble has responded to each of these motions.  Doc. Nos. 114, 115, 116, 117, 136.  On July 18, 2014, the presiding District Judge referred these motions to me for issuance of Reports and Recommendations.  Doc. No. 143.

## II.   ALLEGATIONS OF THE OPERATIVE COMPLAINT.

The Trust is the sole shareholder of NACI, G&G and FIA.  Operative Complaint ¶ 3. Goble was the director of North American Clearing Corporation ("NACC").[8]  FIA was the largest

---

[7] It appears that the District Judge who presided over this case at the time the order was issued considered the amended complaint in the *825 Case* to amend both the original complaint in that case and the original complaint in the present case.  Moreover, as discussed in the order denying the motion for leave to file a fourth amended complaint, the Court has found that the claims against many of the Defendants alleged in the original complaint in the present case were due to be dismissed.  Doc. No. 70.

[8] In the Operative Complaint, Plaintiffs refer to NACC and NACI.  For purposes of this Report and Recommendation, I consider them to be the same entity.

and most successful advocate for small broker dealers in the United States. *Id.* ¶ 5. G&G was a for-profit holding company. *Id.* ¶ 2.

The United States and the SEC embarked on a program to deprive Plaintiffs of their legal rights. They engaged in a negligent investigation and legal process that resulted in the destruction of NACC and loss of substantial value to its shareholders and shut down and destroyed the business enterprises of Plaintiffs in retaliation for certain political events. *Id.* ¶ 6. Specifically, in the complaint in the *SEC Case*, the SEC incorrectly alleged that NACC was not holding the reserves in certain accounts required by federal regulations. *Id.* ¶ 15. The SEC also used the *ex parte* procedure to obtain a temporary restraining order abusively and based on hasty and improperly gathered evidence in an attempt to immediately shut down NACC and put it under SEC control. *Id.* ¶ 24.

SIPC negligently or fraudulently prepared and reported to the court inaccurately on the financial condition of NACC, which led to issuance of a temporary restraining order in the *SEC Case* that should not have been issued. SIPC's actions led to the financial collapse and destruction of NACC, significant diminution in the value of all of its shares, and the destruction of Goble's livelihood. *Id.* ¶ 7. During the time of the dismantling of NACC, Josephine Wang and Christopher LaRosa were attorneys for SIPC. Wang and LaRosa negligently misrepresented financial information to the courts, resulting in the unnecessary and fraudulent liquidation of NACC. *Id.* ¶¶ 12, 31. Specifically, SIPC, through its employees and agents, sought to interfere with the business of NACC by filing a formal application at the direction of the SEC based on unreliable financial evidence and coerced witnesses. *Id.* ¶ 30.

SIPC based its request for a protective decree on financial statements prepared by Sam Luque, Jr., who was then an employee of the SEC. *Id.* ¶ 33. SIPC's own later financial analysis

demonstrated that NACC had actually been solvent to the extent of approximately $3 million. *Id.* ¶ 36.

During the course of the receivership and bankruptcy of NACI, Henry Lange, the Chief Executive Officer of FITS, worked with the bankruptcy trustee and SIPC to dismantle NACC and misreported key financial information that resulted in the destruction of NACC and loss of value to its principal shareholders. Lange also was involved in covering up the true healthy financial condition of NACC and shredding key financial documents. *Id.* ¶ 11. John Rizzo worked with FITS and SIPC in dismantling NACC, misrepresenting its financial information, and shredding and hiding important financial documents. *Id.* ¶ 11.[9]

Ward was the Chief Financial Officer of NACC. Blatman was the President of NACI. Ward and Blatman lied to the SEC regarding the activities of NACC under pressure from FINRA. They also participated materially in making negligent representations to the Court regarding the financial condition and operations of NACC during the SEC investigation and trial. *Id.* ¶¶ 8-9. Specifically, Ward helped FINRA and the SEC to calculate NACC's necessary reserve amounts in a different way than NACC had used. *Id.* ¶ 15. Ward and Blatman also falsely accused NACC of sweeping customer money market accounts and moving these amounts into the firm's operating accounts. *Id.* ¶ 17. The sweeps and transfers alleged in the complaint in the *SEC Case* never occurred without customer consent, and none of that money was used to pay NACC's basic operating expenses. *Id.* ¶¶ 18, 22-23.

Plaintiffs' expert has independently concluded that NACC's financials did not violate FINRA or SEC regulations. *Id.* ¶ 39.

---

[9] There are two paragraphs numbered 11 in the Operative Complaint.

As a result of the actions of the Defendants, Plaintiffs lost millions of dollars of value from the destruction of the company.  *Id.* ¶ 55.  Finally, as a result of the receivership and administration of the bankruptcy estate, FIA and G&G lost expensive computers and other equipment belonging to them.  *Id.* ¶¶ 47-48.

### III.   ANALYSIS.

The United States of America and its agency the SEC (together, the "Federal Defendants") move to dismiss the Operative Complaint because (1) the Court lacks subject-matter jurisdiction over the SEC; (2) the Operative Complaint was not timely served; (3) the United States has not waived sovereign immunity, and (4) Plaintiffs have not alleged negligence and gross negligence claims on which relief can be granted.  Doc. No. 134.  Goble, proceeding *pro se*, filed a response to the motion.  Doc. No. 136.[10]

   A.   *Whether Goble May Proceed As the Assignee of NACI, FIA, G&G and the Trust.*

As a preliminary matter, I note that Goble, proceeding *pro se*, responded to the motions to dismiss on behalf of all Plaintiffs, alleging that he is the assignee of all claims of NACI, FIA, G&G and the Trust.  Doc. Nos. 114, 115, 116, 117, 136.  He recently filed a motion to substitute himself as the sole Plaintiff, individually and as the assignee of all claims of FIA, G&G and the Trust, but that motion had not been resolved as of the writing of this Report and Recommendation.  Doc. No. 153.

---

[10] In the response, Goble argues that the motion to dismiss was improperly filed, citing to a docket entry by a clerk directing the SEC and the United States to file answers by a specified date.  Doc. No. 136 at 2.  A scheduling entry by a clerk is not a court order.  The underlying court order required the United States and the SEC to serve a response to the Operative Complaint.  Doc. No. 132 at 2.  Therefore, Goble's contention that the motion to dismiss was filed in violation of a court order is not supported by the record.

NACI cannot assign any claims it has to Goble because all claims of NACI are held by the Trustee in the bankruptcy proceeding. 11 U.S.C. § 362(a). Therefore, Goble does not have standing to bring claims of injury to NACI.

It does not appear that the claims of FIA, G&G and the Trust were stayed as the result of NACI's bankruptcy proceeding. As a matter of federal law, it appears that these entities could assign their claims to Goble, assuming the assignment was valid. *See Fischer Bros. Aviation, Inc. v. NWA, Inc.*, 117 F.R.D. 144, 146 (D. Minn. 1987).

Fed. R. Civ. P. 25(c) provides, however, that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action . . . ." Goble has not been substituted for FIA, G&G and the Trust as the assignee of their claims. Therefore, FIA, G&G and the Trust remain Plaintiffs. As the Court has previously advised Goble, FIA, G&G and the Trust cannot appear and be heard except through counsel of record. *See Callaway v. Hornbake*, No. 2:11-cv-85-FtM-99DNF, 2012 WL 333769, at *3 (M.D. Fla. Feb. 1, 2012). Because counsel of record for Plaintiffs in the present case did not file responses to the motions to dismiss on behalf of the entity Plaintiffs, I consider the motion to dismiss to be unopposed by FIA, G&G and the Trust.[11]

B.  *Subject-Matter Jurisdiction.*

"The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). When sovereign immunity is an issue, courts engage in a two-part inquiry. "[A plaintiff] must first demonstrate

---

[11] Even if FIA, G&G and the Trust had properly responded to the motion to dismiss, the outcome would be the same because the Court does not have subject-matter jurisdiction over the claims against the Federal Defendants, for the reasons discussed below.

whether there has been a waiver of sovereign immunity, and if so, whether the 'source of substantive law upon which the claimant relies provides an avenue for relief.'"  *Aloupis v. United States*, 149 F. App'x 889, 891 (11th Cir. 2005) (cited as persuasive authority) (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 (1994)).

In his response, Goble relies on 28 U.S.C. § 1346 as the jurisdictional basis for this Court to adjudicate his claims against the United States.[12]  Doc. No. 136 ¶ 13.  Subsection (b) of Section 1346 is part of the Federal Tort Claims Act ("FTCA").  Under the FTCA, Congress waived the sovereign immunity of the United States (subject to certain exceptions) over claims that are "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

1. <u>Subject-Matter Jurisdiction Over the SEC</u>.

Although Plaintiffs named the United States as a Defendant in the caption of the case, the United States correctly argues that the factual allegations of the complaint refer only to actions by the SEC.  The SEC cannot be sued under the FTCA.  28 U.S.C. § 2679(a); *Le v. SEC*, 542 F. Supp. 2d 1318, 1323 (N.D. Ga. 2008).

---

[12] While Plaintiffs should have alleged the basis for this Court to exercise subject-matter jurisdiction in this case in the Operative Complaint, I recommend that the Court not dismiss the Operative Complaint for failure to make this allegations.  As shown in the Background section above, granting Plaintiffs leave to file an amended complaint simply to allege jurisdiction would further, and needlessly, complicate the litigation.

Goble contends that the SEC waived sovereign immunity from suit in this case in a letter denying Plaintiffs' administrative FTCA claim against the SEC. Doc. No. 136 at 6, 12. In the letter, the Executive Director of the SEC wrote, "Please be advised that this is a final decision under the FTCA. In accordance with the FTCA, if you are dissatisfied with this decision, you may file suit in an appropriate United States District Court within six months of the mailing date of this decision. *See* 28 U.S.C. 2401(b)." *Id.*

The Court has previously considered and rejected this waiver argument. The Court wrote as follows:

> [E]ven if the letter could amount to a waiver of sovereign immunity, the letter does no such thing. Rather, the letter merely states that the SEC has denied the claims that Goble submitted administratively pursuant to the FTCA, and that Goble may file suit challenging the decision in federal court within the time period allowed in the statute of limitations. Nothing in the letter purports to waive the SEC's sovereign immunity.

Doc. No. 70 at 7 (citation omitted). Therefore, the claims against the SEC are due to be dismissed for lack of subject-matter jurisdiction.

2. <u>Subject-Matter Jurisdiction Over the United States</u>.

To the extent that the Court construes the Operative Complaint to state claims against the United States, those claims are also barred by sovereign immunity. The FTCA provides that § 1346(b)(1) does not apply in cases in which a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This is generally referred to as the discretionary function exception.

"The Supreme Court has established a two-part test for determining whether government conduct challenged by a plaintiff falls within the discretionary function exception. First, a court

must look to the nature of each act and whether it involves an 'element of judgment or choice.'" *Donahue v. United States*, 870 F. Supp. 2d 97, 104 (D.D.C. 2012) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "Second, if the challenged acts do involve an element of judgment or choice, the court still must consider whether those acts 'are of the nature and quality that Congress intended to shield from tort liability.'" *Id.* at 104-05 (quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995), itself quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).

Several courts have held that the discretionary function exception generally precludes FTCA claims against the United States arising from allegedly negligent and improper conduct of SEC investigations and civil actions. *See, e.g.*, *Baer v. United States*, 722 F.3d 168 (3d Cir. 2013); *Molchatsky v. United States*, 713 F.3d 159 (2d Cir. 2013); *Dichter-Mad Family Partners, LLP v. United* States, 709 F.3d 749 (9th Cir. 2013); *Donahue*, 870 F. Supp. 2d at 104; *Robert Juan Dartez, LLC v. United States*, 824 F. Supp. 2d 743 (N.D. Tex. 2011). I find the analyses in these cases persuasive and applicable to Plaintiffs' claims of misconduct by SEC employees and agents in this case.

For example, the *Donahue* court considered the application of the discretionary function exception to an FTCA case brought by former investors in, and victims of, the Bernard Madoff Ponzi scheme. Plaintiffs alleged that the SEC committed "'serial, gross negligence'" in its investigations and examinations of Madoff and his firm resulting in Plaintiffs collectively losing more than two million dollars in investments as a result of the Madoff Ponzi scheme. *Donahue*, 870 F. Supp. 2d at 100. Plaintiffs argued that the SEC breached a duty of care to them and other investors and a duty to warn investors that Madoff was engaged in a Ponzi scheme. *Id.* at 102.

The United States filed a motion to dismiss the complaint for lack of subject-matter jurisdiction. It argued that "the actions taken by SEC staffers in the course of the agency's Madoff inquiries that allegedly harmed the plaintiffs were discretionary within the meaning of the FTCA. The government also maintain[ed] that those actions [were] intertwined with the SEC's 'quintessentially discretionary' power to commence civil proceedings against suspected wrongdoers, and thus immune from FTCA liability." *Id.* at 101 (citation omitted).

The *Donahue* court looked to 15 U.S.C. § 78u(a)(1) to conclude that the SEC's use of its investigative power involves an element of judgment or choice under the first part of the discretionary function exception test. *Id.* at 105. This statute provides as follows:

> The Commission may, *in its discretion,* make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter . . . . The Commission is authorized *in its discretion,* to publish information concerning any such violations, and to investigate any facts, conditions, practices, or matters which it may deem necessary or proper to aid in the enforcement of such provisions . . . .

15 U.S.C. § 78u(a)(1) (emphasis added). Because the SEC may, but is not required, to conduct investigations, it necessarily exercises an element of judgment or choice in exercising its investigatory discretion. *Donahue*, 870 F. Supp. 2d at 105. Further, the court observed that "'the sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice.'" *Id.* at 107 (quoting *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001)).

With respect to the second part of the test—whether these discretionary acts are of the nature and quality that Congress intended to shield from tort liability—the *Donahue* court relied on the Supreme Court's decision in *Gaubert*. In that case, the Supreme Court stated that "'if a regulation allows the employee discretion, the very existence of the regulation creates a strong

presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation.'"  *Id.* (quoting *Gaubert*, 499 U.S. at 324).  The pertinent regulation is 17 C.F.R. § 202.5(a), which reads as follows:

> Where, from complaints received from members of the public, communications from Federal or State agencies, examination of filings made with the Commission, or otherwise, it appears that there may be violation of the acts administered by the Commission or the rules or regulations thereunder, a preliminary investigation is generally made.  In such preliminary investigation no process is issued or testimony compelled.  The Commission may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary . . . .

"This language creates a 'strong presumption' that any investigatory decisions made by SEC employees involve policy considerations.  When regulators 'exercise[ ] their discretion to choose from various courses of action,' including choices that involve 'operational' and 'day-to-day decisions,' the presumption attaches that such choices are made in furtherance of the policies underlying the regulators' authority."  *Donahue*, 870 F. Supp. 2d at 107 (quoting *Gaubert*, 499 U.S. at 332).

Similarly, the court found that the SEC's decision whether to commence administrative proceedings and civil actions "'has long been regarded as a classic discretionary function[.]'"  *Id.* at 108 (quoting *Sloan*, 236 F.3d at 760).  The court reasoned that when a complaint alleges that the harm caused to a plaintiff arose from the suspension of the business activity under investigation, the allegedly improper investigation caused no injury distinct from the harm caused by the ultimate filing of a civil action, which is a protected discretionary decision.  Therefore, the discretionary function exception applies.  *Id.* at 109 (quoting *Sloan*, 236 F.3d at 762, which itself quoted *Gray v. Bell*, 712 F.2d 490, 515 (D.C. Cir. 1983)).  For all of these reasons, the court in *Donahue* granted the motion to dismiss.  *Id.* at 115.

In the Operative Complaint, Plaintiffs do not allege that the United States violated mandatory obligations imposed by a specific rule, regulation or policy. Plaintiffs complain that the SEC investigators did not talk to Goble or permit him to explain the circumstances underlying the alleged improper liquidation of customer accounts. *See, e.g.*, Operative Complaint ¶¶ 13-14, 18, 20. As discussed above, the SEC investigators had discretion to determine how best to conduct the investigation, including discretion not to question Goble.

Plaintiffs also allege that the SEC relied on inaccurate financial statements prepared by Luque, an SEC employee who had no formal accounting education. *Id.* ¶¶ 31, 33, 35.[13] However, "where an agency's decision to take adverse action is shielded from liability by the discretionary function exception, the plaintiff cannot circumvent that obstacle by attacking the negligence of an underlying investigation that prompted the action." *Donahue*, 870 F. Supp. 2d at 108.

Plaintiffs also complain that the SEC improperly sought issuance of a temporary restraining order and appointment of a receiver *ex parte*, which prevented them from properly responding to the SEC's allegations. Operative Complaint ¶¶ 24-25. Federal Rule of Civil

---

[13] The presiding judge in the *SEC Case* accepted Luque as an expert witness on the Customer Protection Rule. *SEC Case*, Doc. No. 260 at 3.

> [The Customer Protection Rule] is designed to protect broker-dealer customers in the event the brokerage firm becomes insolvent. It requires that brokerage firms establish a separate Reserve Bank Account ("Reserve Account") to hold an amount of cash adequate to reimburse customers if the firm fails. 17 C.F.R. § 240.15c3-3(e)(1). The Rule also dictates that firms use the regulation's Reserve Formula to calculate the balance they must maintain in the Reserve Account. *Id.*

*SEC v. Goble*, 682 F.3d 934, 940 (11th Cir. 2012). In its opinion affirming the decision of the District Court that Goble aided and abetted NACI's violation of the Customer Protection Rule, the United States Court of Appeals for the Eleventh Circuit stated, "There is no question [NACI] failed to maintain the balance required by the [Customer Protection] Rule." *Id.* at 946. The Eleventh Circuit further stated, "Goble does not dispute that [NACI] failed to comply with these regulations." *Id.*

Procedure 65(b)(1) specifically permits a party to seek a temporary restraining order without notice to the adverse party.   Whether to seek these orders *ex parte* or with notice to an adverse party is, necessarily, an exercise of discretion by the attorney for the Government.

Accordingly, I recommend that the Court find that the factual allegations in the Operative Complaint are insufficient to overcome the discretionary function exception to exercise of subject-matter jurisdiction under the FTCA.   If the Court accepts that recommendation, the claims in the Operative Complaint against the United States are due to be dismissed for lack of subject-matter jurisdiction.   Because Plaintiffs have been given ample opportunity to file complaints that state claims on which relief could be granted, Plaintiffs need not be given leave to file another amended complaint because granting such relief would be futile.

**IV.    RECOMMENDATION.**

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** the Federal Defendants' Motion to Dismiss (Doc. No. 134) and **DISMISS** the claims against the SEC and the United States for lack of subject-matter jurisdiction.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 14, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy