UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FINANCIAL INDUSTRY
ASSOCIATION, G&G HOLDINGS, INC.,
RICHARD GOBLE and THE GOBLE
FIRST REVOCABLE FAMILY TRUST
MAY 13, 1999,

        Plaintiffs,

v.   Case No:   6:10-cv-408-Orl-40KRS

THE UNITED STATES OF AMERICA,
SECURITIES AND EXCHANGE
COMMISSION, SECURITIES
INVESTOR PROTECTION
CORPORATION, BRUCE BLATMAN,
TIMOTHY WARD, HENRY LANGE,
FINANCIAL INDUSTRY TECHNICAL
SERVICES, INC., JOHN RIZZO,
JOSEPHINE WANG, and
CHRISTOPHER LAROSA,

        Defendants.

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT:

    This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS SECURITIES INVESTOR PROTECTION CORPORATION, JOSEPHINE WANG AND CHRISTOPHER LAROSA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE (Doc. No. 110)** |
| **FILED:** | **April 8, 2014** |

**I.      BACKGROUND.**

Plaintiff Richard Goble was the director of North American Clearing, Inc. ("NACI"), a stock-brokerage firm. On May 27, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against NACI, Goble, Bruce B. Blatman (NACI's president) and Timothy J. Ward (NACI's financial and operations principal) alleging that they violated securities laws, including the Exchange Act, and other legal requirements by improperly selling customer money market funds to pay NACI's business expenses resulting in a capital deficiency for NACI. *SEC v. N. Am. Clearing, Inc.*, Case No. 6:08-cv-829-Orl-35KRS, Doc. No. 1 (M.D. Fla. May 27, 2008) (the "*SEC Case*"). The SEC filed an *ex parte* motion for a temporary restraining order and an emergency motion to appoint a receiver for NACI, which motions were granted. *Id.*, Doc. Nos. 2, 6, 7, 12. Peter Anderson, Esq., was appointed as the Receiver. *Id.*, Doc. No. 12. Anderson retained lawyers with Sutherland, Asbill & Brennan, LLP (Keith J. Barnett, Michael K. Freedman and Olga Greenberg) to represent him in his capacity as Receiver.

Thereafter, Blatman, Ward and NACI, through Receiver Anderson, agreed to entry of injunctions against them. *Id.*, Doc. Nos. 41-2, 42-2, 60-2, 62, 63, 64, 111-2, 113, 131. Final judgments were entered against Blatman, Ward and NACI. *Id.*, Doc. Nos. 68, 160, 161, 280. Goble continued to litigate the case.

On July 28, 2008, the Securities Investor Protection Corporation ("SIPC")[1], represented by attorneys Josephine Wang and Christopher H. LaRosa, filed an application for entry of a protective decree in the *SEC Case* and requested the appointment of Robert N. Gilbert, Esq., as

---

[1] SIPC was created by the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa, *et seq*. It is a nonprofit corporation that is not an agency of the United States. *Id.* § 78ccc (1). Its purpose is to provide financial relief to the customers of failing broker-dealers with whom the customers had left cash or securities on deposit. *SIPC v. Barbour*, 421 U.S. 412, 413 (1975).

Trustee, and the law firm Carlton Fields, P.A. (specifically attorneys Franck D. Chantayan and David Hywel Leonard) as Trustee's counsel. This application operated as an automatic stay of the litigation as to NACI under the bankruptcy code. *Id.*, Doc. No. 71. The application was granted on July 28, 2008, and Trustee Gilbert was appointed for the liquidation of the business of NACI. *Id.*, Doc. No. 75. As of the writing of this Report and Recommendation, it appears that the bankruptcy proceeding remains pending. *SIPC v. N. Am. Clearing, Inc.*, Adversary Proceeding No. 6:08-ap-145-KSJ (Bankr. M.D. Fla.).

In March and April 2010, Goble filed motions in the *SEC Case* seeking permission to sue Receiver Anderson, Trustee Gilbert and their respective attorneys and agents in separate litigation as required by *Barton v. Barbour*, 104 U.S. 126, 127 (1881). *SEC Case*, Doc. Nos. 204, 208. The Court denied the motions. *Id.*, Doc. No. 209.

The Court conducted a bench trial on the SEC's claims against Goble individually. *Id.*, Doc. Nos. 250-54. On April 27, 2011, the Court entered a Bench Trial Opinion. *Id.*, Doc. No. 260. The Court found that Goble violated and aided and abetted violations of the Exchange Act (Counts II, IV and V of the *SEC Case* Complaint). *Id.* at 22, 24, 26. The Court wrote: "It is clear from the evidence of record, that North American had financial problems and Defendant Goble and North American's executives made a substantial effort to conceal it." *Id.* at 18. The Court entered a permanent injunction against Goble and ordered him to pay a civil penalty of $7,500.00. *Id.* at 29-31. Final judgment was entered on April 27, 2011. *Id.*, Doc. No. 261.

Goble appealed the judgment. On May 29, 2012, the United States Court of Appeals for the Eleventh Circuit affirmed the finding that Goble aided and abetted violations of the Exchange Act, reversed the decision in other respects, and remanded the case for reconsideration of the scope of the injunction. *Id.*, Doc. No. 269. On April 3, 2013, the Court entered a revised form of

injunction. *Id.*, Doc. No. 282. Goble has filed a motion for relief from the judgment, which is pending as of the writing of this Report and Recommendation. *Id.*, Doc. No. 289.

Meanwhile, on March 16, 2010, Goble, Financial Industry Association, Inc. ("FIA"), G&G Holdings, Inc. ("G&G") and the Goble First Revocable Family Trust May 13, 1999 ("Trust"), through counsel, filed a civil complaint in the present case naming the SEC, the Financial Industry Regulatory Authority, Inc. ("FINRA"), the Depository Trust and Clearing Corporation ("DTCC"), Mary Schapiro (the Chairman of the SEC), Grace Vogel (FINRA Vice President of Member Regulation), Larry Thompson (DTCC managing director and general counsel), Ward, Blatman, SEC examiner George Franceschini, Sam Luque, Jr. (an expert witness for the Receiver and the SEC in the *SEC Case*)[2], and SIPC as Defendants. Doc. No. 1. The Plaintiffs alleged that all Defendants tortiously interfered with their business relationships (Count I) and committed gross negligence (Count IV); that the SEC and SIPC engaged in abuse of process (Count II); and, that FINRA, the SEC, Schapiro, Vogel and Luque defamed the Trust and Goble (Count IV).[3] Subsequently, the Plaintiffs voluntarily dismissed their claims against Blatman, Ward, Franceschini and the SEC. Doc. No. 18.

On May 18, 2011, FIA, G&G, the Trust and Goble, through counsel, filed a new case against the United States of America, SEC, SIPC, Blatman, Ward, Financial Industry Technical Services, Inc. ("FITS"), Henry Lange (Chief Executive Officer of FITS), John Rizzo, Josephine Wang and Christopher LaRosa (attorneys for SIPC). *Fin. Indus. Ass'n v. SEC*, Case No. 6:11-cv-825-Orl-40KRS (the "*825 Case*"), Doc. No. 2 (M.D. Fla. May 18, 2011). Plaintiffs alleged that all Defendants committed negligence, gross negligence and abuse of process by presenting false

---

[2] *See SEC Case*, Doc. No. 157.

[3] There are two causes of action labelled Count IV and no cause of action labelled Count III.

information to the courts in the *SEC Case* and the resulting bankruptcy proceedings (Counts I, II and III) and conspired to do so (Count IV), and that unidentified Defendants wrongfully converted equipment, supplies and proprietary and confidential information belonging to FIA and G&G (Count V).[4]

On June 4, 2013, counsel for Plaintiffs was allowed to withdraw from the *825 Case*. *825 Case*, Doc. No. 25. However, counsel for Plaintiffs was only permitted to withdraw as counsel for Goble in the present case because FIA, G&G and the Trust could not appear and be heard in the case except through counsel of record. Doc. No. 53.

On July 2, 2013, the Court consolidated the present case and the *825 Case* and designated the present case as the Lead Case. Doc. No. 66.

Meanwhile, Goble, proceeding *pro se*, filed a motion for leave to file an amended complaint.[5] Doc. No. 57. He proposed to name only himself as Plaintiff, individually and as assignee of the claims of FIA, G&G, the Trust and NACI (collectively the "Goble Entities"). Doc. No. 57-1. He proposed to name as Defendants the United States of America, the SEC, SEC lawyer Brian Barry, Franceschini, Luque, Jr., Blatman, Ward, SIPC and its attorneys in the *SEC Case*, FITS and its principal (Lange) and employee (Rizzo) (agents of the Trustee),[6] Glassratner Advisory and Capital Group, LLC, Thomas Santoro, Kapila and Company, Soneet R. Kapila, Trustee Gilbert and his attorneys, and Receiver Anderson and his attorneys. The Court denied the

---

[4] Count V alleges that "*Plaintiffs* intentionally stole and appropriated to themselves computer equipment, office supplies, and proprietary and confidential information belonging to G&G Holdings and the Financial Industry Association." *825 Case*, Doc. No. 2 ¶ 69 (emphasis added).

[5] Goble asked for leave file a fourth amended complaint. Doc. No. 57. It appears to the Court that Goble considered the original complaints in the *825 Case* and this case to be the first two complaints and the amended complaint in the *825 Case* to be the third amended complaint. *See infra* note 7.

[6] *See SEC Case*, Doc. No. 214-1.

motion because the SEC and its employees were immune from suit, Goble had not shown he had obtained leave of Court to sue Trustee Gilbert, Receiver Anderson or their attorneys and agents, and other causes of action failed to state claims on which relief could be granted.   Doc. Nos. 67, 70.   The Court gave Goble "one final opportunity" to file a renewed motion for leave to file an amended complaint that corrected the deficiencies identified by the Court.   Doc. No. 70 at 9. The Court specifically ordered Goble not to assert certain claims and not to name certain individuals and entities as Defendants in a proposed amended complaint.   *Id.* at 10.   In a separate order, the Court indicated that if Goble did not file a motion for leave to file an amended complaint that complied with the Court's orders, the case would proceed on the amended complaint in the *825 Case*.   Doc. No. 75 at 2 n.1.[7]

On December 2, 2013, Goble, proceeding *pro se*, filed a motion for leave to amend his complaint.   Doc. No. 76.   On December 9, 2013, this motion was denied because Goble proposed to assert claims that the Court had ordered him not to assert and to name Defendants that the Court ordered him not to include in an amended complaint.   Doc. No. 77.

On January 23, 2014, Goble filed his last motion for leave to file an amended complaint. Doc. No. 78.   The motion for leave to amend was denied as untimely.   Doc. No. 79. Accordingly, the amended complaint in the *825 Case* became the operative complaint.   *825 Case*, Doc. No. 2 (the "Operative Complaint").

Several of the Defendants have filed motions to dismiss.   Doc. Nos. 102, 103, 108, 110, 134.   Goble has responded to each of these motions.   Doc. Nos. 114, 115, 116, 117, 136.   On

---

[7] It appears that the District Judge who presided over this case at the time the order was issued considered the amended complaint in the *825 Case* to amend both the original complaint in that case and the original complaint in the present case.   Moreover, as discussed in the order denying the motion for leave to file a fourth amended complaint, the Court has found that the claims against many of the Defendants alleged in the original complaint in the present case were due to be dismissed.   Doc. No. 70.

July 18, 2014, the presiding District Judge referred these motions to me for issuance of Reports and Recommendations. Doc. No. 143.

## II. ALLEGATIONS OF THE OPERATIVE COMPLAINT.

The Trust is the sole shareholder of NACI, G&G and FIA. Operative Complaint ¶ 3. Goble was the director of North American Clearing Corporation ("NACC").[8] FIA was the largest and most successful advocate for small broker dealers in the United States. *Id.* ¶ 5. G&G was a for-profit holding company. *Id.* ¶ 2.

The United States and the SEC embarked on a program to deprive Plaintiffs of their legal rights. They engaged in a negligent investigation and legal process that resulted in the destruction of NACC and loss of substantial value to its shareholders and shut down and destroyed the business enterprises of Plaintiffs in retaliation for certain political events. *Id.* ¶ 6. Specifically, in the complaint in the *SEC Case*, the SEC incorrectly alleged that NACC was not holding the reserves in certain accounts required by federal regulations. *Id.* ¶ 15. The SEC also used the *ex parte* procedure to obtain a temporary restraining order abusively and based on hasty and improperly gathered evidence in an attempt to immediately shut down NACC and put it under SEC control. *Id.* ¶ 24.

SIPC negligently or fraudulently prepared and reported to the court inaccurately on the financial condition of NACC, which led to issuance of a temporary restraining order in the *SEC Case* that should not have been issued. SIPC's actions led to the financial collapse and destruction of NACC, significant diminution in the value of all of its shares, and the destruction of Goble's livelihood. *Id.* ¶ 7. During the time of the dismantling of NACC, Josephine Wang and

---

[8] In the Operative Complaint, Plaintiffs refer to NACC and NACI. For purposes of this Report and Recommendation, I consider them to be the same entity.

Christopher LaRosa were attorneys for SIPC. Wang and LaRosa negligently misrepresented financial information to the courts, resulting in the unnecessary and fraudulent liquidation of NACC. *Id.* ¶¶ 12, 31. Specifically, SIPC, through its employees and agents, sought to interfere with the business of NACC by filing a formal application at the direction of the SEC based on unreliable financial evidence and coerced witnesses. *Id.* ¶ 30.

SIPC based its request for a protective decree on financial statements prepared by Sam Luque, Jr., who was then an employee of the SEC. *Id.* ¶ 33. SIPC's own later financial analysis demonstrated that NACC had actually been solvent to the extent of approximately $3 million. *Id.* ¶ 36.

During the course of the receivership and bankruptcy of NACI, Henry Lange, the Chief Executive Officer of FITS, worked with the bankruptcy trustee and SIPC to dismantle NACC and misreported key financial information that resulted in the destruction of NACC and loss of value to its principal shareholders. Lange also was involved in covering up the true healthy financial condition of NACC and shredding key financial documents. *Id.* ¶ 11. John Rizzo worked with FITS and SIPC in dismantling NACC, misrepresenting its financial information, and shredding and hiding important financial documents. *Id.* ¶ 11.[9]

Ward was the Chief Financial Officer of NACC. Blatman was the President of NACI. Ward and Blatman lied to the SEC regarding the activities of NACC under pressure from FINRA. They also participated materially in making negligent representations to the Court regarding the financial condition and operations of NACC during the SEC investigation and trial. *Id.* ¶¶ 8-9. Specifically, Ward helped FINRA and the SEC to calculate NACC's necessary reserve amounts in a different way than NACC had used. *Id.* ¶ 15. Ward and Blatman also falsely accused NACC

---

[9] There are two paragraphs numbered 11 in the Operative Complaint.

of sweeping customer money market accounts and moving these amounts into the firm's operating accounts.  *Id.* ¶ 17.  The sweeps and transfers alleged in the complaint in the *SEC Case* never occurred without customer consent, and none of that money was used to pay NACC's basic operating expenses.  *Id.* ¶¶ 18, 22-23.

Plaintiffs' expert has independently concluded that NACC's financials did not violate FINRA or SEC regulations.  *Id.* ¶ 39.

As a result of the actions of the Defendants, Plaintiffs lost millions of dollars of value from the destruction of the company.  *Id.* ¶ 55.  Finally, as a result of the receivership and administration of the bankruptcy estate, FIA and G&G lost expensive computers and other equipment belonging to them.  *Id.* ¶¶ 47-48.

**III.    ANALYSIS.**

SIPC and Attorneys Wang and LaRosa (collectively, the "SIPC Defendants") move to dismiss the Operative Complaint because (1) they are absolutely immune under Florida's litigation privilege; (2) SIPC is statutorily immune from liability; and, (3) the Operative Complaint fails to state claims on which relief could be granted against any of the SIPC Defendants.  Goble, proceeding *pro se*, filed a response to the motion.  Doc. No. 117.

    *A.    Preliminary Issues.*

        1.    <u>Jurisdiction</u>.

In the Operative Complaint, Plaintiffs did not allege the basis under which they contend this Court can exercise subject-matter jurisdiction over the SIPC Defendants.  In response to a supplemental briefing order, the SIPC Defendants and Goble persuasively assert that this Court has original jurisdiction to hear this action under 15 U.S.C. § 78ccc(b)(1), which provides that SIPC has the express power "to sue and be sued, complain and defend, in its corporate name and

through its own counsel, in any State, Federal, or other court." Doc. No. 163 at 2; Doc. No. 166. The SIPC Defendants rely on *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), in which the United States Supreme Court considered whether a "sue or be sued" clause in the charter of the American Red Cross conferred original jurisdiction on federal courts over all cases in which the Red Cross is a party. The Court concluded that a congressional corporate charter may be read to confer federal court jurisdiction if it specifically mentions the federal courts. *Id.* at 255. The statute governing the Red Cross "authorizes the organization 'to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.'" *Id.* at 248 (citing 36 U.S.C. § 2). Because this charter specifically refers to the federal courts, the Supreme Court concluded that the Red Cross Charter "sue and be sued" provision conferred original federal jurisdiction. *Id.* at 257.

As quoted above, SIPC's "sue and be sued" clause also specifically refers to the federal courts. Therefore, I recommend that the Court find that it has subject-matter jurisdiction over the claims against the SIPC Defendants in this case.

## 2. Whether Goble May Proceed As the Assignee of NACI, FIA, G&G and the Trust.

I note that Goble, proceeding *pro se*, responded to the motions to dismiss on behalf of all Plaintiffs, alleging that he is the assignee of all claims of NACI, FIA, G&G and the Trust. Doc. Nos. 114, 115, 116, 117, 136. He recently filed a motion to substitute himself as the sole Plaintiff, individually and as the assignee of all claims of FIA, G&G and the Trust, but that motion had not been resolved as of the writing of this Report and Recommendation. Doc. No. 153.

NACI cannot assign any claims it has to Goble because all claims of NACI are held by the Trustee in the bankruptcy proceeding. 11 U.S.C. § 362(a). Therefore, Goble does not have standing to bring claims of injury to NACI.

It does not appear that the claims of FIA, G&G and the Trust were stayed as the result of NACI's bankruptcy proceeding. As a matter of federal law, it appears that these entities could assign their claims to Goble, assuming the assignment was valid. *See Fischer Bros. Aviation, Inc. v. NWA, Inc.*, 117 F.R.D. 144, 146 (D. Minn. 1987).

Fed. R. Civ. P. 25(c) provides, however, that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action . . . ." Goble has not been substituted for FIA, G&G and the Trust as the assignee of their claims. Therefore, FIA, G&G and the Trust remain Plaintiffs. As the Court has previously advised Goble, FIA, G&G and the Trust cannot appear and be heard except through counsel of record. *See Callaway v. Hornbake*, No. 2:11-cv-85-FtM-99DNF, 2012 WL 333769, at *3 (M.D. Fla. Feb. 1, 2012). Because counsel of record for Plaintiffs in the present case did not file responses to the motions to dismiss on behalf of the entity Plaintiffs, I consider the motion to dismiss to be unopposed by FIA, G&G and the Trust.[10]

    B.    *The SIPC Defendants Are Absolutely Immune from Liability under Counts I through IV.*

In Counts I through IV of the Operative Complaint, Plaintiffs allege that the SIPC Defendants are liable for negligence, gross negligence, abuse of process and civil conspiracy. None of the parties have provided the Court with a choice-of-law analysis. Federal courts apply the forum state's choice of law rule. *In re Davis*, 99 B.R. 95, 96 (Bankr. M.D. Fla. 1989) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In a tort action, "Florida courts have adopted the 'significant relationship' test . . . ." *Id.* In the present case, Florida has the most

---

[10] Even if FIA, G&G and the Trust had properly responded to the motion to dismiss, the outcome would be the same, for the reasons discussed below.

significant relationship with the conduct allegedly underlying the alleged causes of action because all of the events supporting each cause of action occurred in Florida.

Florida recognizes that a party and its attorneys are absolutely immune from suits based on any act occurring during a judicial proceeding, including an act that constitutes a tort, so long as the act has some relation to the judicial proceeding.  *See Green Leaf Nursery v. E.I. Dupont De Nemours & Co.*, 341 F.3d 1292, 1302-03 (11th Cir. 2003) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606 (Fla. 1994) ("*Levin*"), and other authorities); *Coursen v. JP Morgan Chase & Co.*, No. 8:12-cv-690-T-26EAJ, 2013 WL 5437348, at *8 (M.D. Fla. June 25, 2013) ("The litigation privilege is intended to afford attorneys absolute immunity from their actions related to judicial proceedings.").  The Florida Supreme Court has applied the litigation privilege to all causes of action, stating as follows:

> "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct."

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (quoting *Levin*, 639 So. 2d at 608)).  An affirmative defense, such as the litigation privilege, may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274-77 (11th Cir. 2004).

Goble argues that the litigation privilege does not apply because SIPC was not a party to the underlying litigation.  Doc. No. 117 at 7-8.  This argument is incorrect.

> SIPC shall be deemed to be a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters, and shall be deemed to have intervened with respect to all such matters with the same force and effect as if a petition for such purpose had been allowed by the court.

15 U.S.C. § 78eee(d); *see also SIPC v. N. Am. Clearing, Inc.*, Adversary Proceeding No. 6:08-ap-145-KSJ, Doc. No. 11 (Bankr. M.D. Fla. Aug. 27, 2008) (allowing Attorneys Wang and LaRosa to appear as counsel on behalf of SIPC). Further, SIPA permitted Attorneys Wang and LaRosa to file the application for a protective decree on behalf of SIPC in the *SEC Case*. 15 U.S.C. § 78ccc(b)(1).

In the Operative Complaint, all of the acts by SIPC and its attorneys that Plaintiffs allege were improper were related to the judicial proceedings in this Court and in the bankruptcy court: specifically, filing the application for entry of a protective decree; making representations in Court about NACI's financial condition; and, assisting the bankruptcy trustee. Therefore, I recommend that the Court find that the litigation privilege gives each of the SIPC Defendants absolute immunity from liability under Counts I through IV of the Operative Complaint.

C.   *Count V Fails to State a Claim on Which Relief Could be Granted.*

To the extent that Plaintiffs intended to allege that SIPC and its attorneys should be found liable for conversion, Count V of the Operative Complaint fails to state a claim on which relief could be granted. In evaluating a motion arising under Fed. R. Civ. P. 12(b)(6), the Eleventh Circuit suggests a "'two-pronged approach.'" First, the court should "eliminate any allegations in the complaint that are merely legal conclusions," then the court should assume the veracity of the well-pleaded facts and determine whether those facts "'plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The allegations of the Operative Complaint do not state a plausible claim that SIPC and its attorneys wrongfully converted property belonging to Plaintiffs. In Count V, Plaintiffs allege that "*Plaintiffs* intentionally stole and appropriated to themselves computer equipment, office supplies,

and proprietary and confidential information belonging to G&G Holdings and the Financial Industry Association. . . . This equipment [w]as not part [of] either the receivership of NACC or the resulting bankruptcy estate."   Operative Complaint ¶¶ 69, 70 (emphasis added).   Plaintiffs did not allege that any Defendants were involved in this alleged conversion.   Moreover, there are no well-pleaded allegations of fact in the Operative Complaint that raise any plausible claim that SIPC and its attorneys took any steps to acquire property of any Plaintiffs other than filing the application for entry of a protective decree and assisting the bankruptcy trustee.   Therefore, I recommend that the Court find that the claim in Count V of the Operative Complaint should be dismissed for failure to state a claim on which relief can be granted.

>    D.    *Dismissal With Prejudice*.

The SIPC Defendants ask that the Court dismiss all claims against them with prejudice. This request is well taken as to causes of action for which the SIPC Defendants are absolutely immune.   Dismissal of Count V with prejudice is also appropriate because Plaintiffs were given many opportunities to file amended complaints that state claims on which relief could be granted, but they failed to do so.   *See, e.g.*, *Hopkins v. JP Morgan Chase Bank N.A.*, Case No. 6:12-cv-1743-Orl-40KRS, Doc. No. 168 at 7-8 (M.D. Fla. July 29, 2014).

**IV.    RECOMMENDATION.**

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** Defendants Securities Investor Protection Corporation, Josephine Wang and Christopher LaRosa's Motion to Dismiss Plaintiffs' First Amended Complaint *With Prejudice*, Doc. No. 110,

and **DISMISS** the claims against the Securities Investor Protection Corporation, Josephine Wang and Christopher LaRosa with prejudice.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 29, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy