UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

NORTH AMERICAN CLEARING, INC.                           Adversary No.: 6:08-ap-00145-KSJ

    Debtor.
_____/

ROBERT N. GILBERT, Trustee,                              Adversary No.: 6:10-ap-00151-KSJ

    Plaintiff,

v.

RICHARD GOBLE,

    Defendant.
_____/

## NOTICE OF FILING DEFENDANT'S EXPERT DISCLOSURES

Defendant RICHARD GOBLE ("GOBLE"), by his undersigned counsel, pursuant to this Court's June 23, 2011 Case Management Order, hereby files the Expert Report of Anthony Ruben.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

Adversary No.: 6:10-ap-00151-KSJ

Dated: September 2, 2011  
Boca Raton, Florida

Respectfully submitted,

_____  
ERIC LEE (Bar No. 961299)  
lee@leeamlaw.com  
GINA GREENWALD (Bar No. 20288)  
ggreenwald@leeamlaw.com  
Lee & Amtzis, P.L.  
5550 Glades Road, Suite 401  
Boca Raton, FL 33431  
Telephone: (561) 981-9988  
Facsimile: (561) 981-9980 Fax  
**Attorneys for Defendant**  
**RICHARD GOBLE**

LEE & AMTZIS, P.L.  
ATTORNEYS AT LAW

2

Adversary No.: 6:10-ap-00151-KSJ

## SERVICE LIST
### (ECF)

Franck D. Chantayan, Esq.
Carlton Fields, P.A.
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, FL  33401

Hywel Leonard, Esq.
Christopher M. Sacco, Esq.
Carlton Fields, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL  33607

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

**EXPERT REPORT OF ANTHONY RUBEN**

Pursuant to 28 USC 1746, the undersigned states as follows:

My name is Anthony Ruben. I am over 21 years of age and have personal knowledge of the matters set forth herein. My background is attached as Exhibit 1.

**BACKGROUND AND QUALIFICATIONS**

I have worked in accounting and financial roles throughout my twenty year career. My educational background includes a B.S. in Accounting from the University of Illinois and an MBA in Finance and Corporate Strategy from the University of Michigan. I passed the CPA exam in Illinois. I have served as the CFO of multiple public and private companies, including those that produced public filings as required by SEC regulation. I have consulted, through my consulting company, on financial and other matters for a variety of regulated and unregulated companies. I have served on the Board of Directors and advisory boards of multiple companies and organizations. I have spoken to multiple professional groups on topics related to accounting and finance. In 2009, I prepared an expert report and testified as an expert and by deposition in the case, Securities and Exchange Commission, Plaintiff v. North American Clearing, Inc., Richard L. Goble, Bruce B. Blatman, and Timothy J. Ward, Defendants.

As a CFO and consultant I have direct experience in compiling financial statements. As a consultant, I have direct experience in assessing capital adequacy and the quality of financial statements, including multiple experiences with both financially sound and financially distressed companies.

My hourly rate for this engagement is $350 per hour. I spent approximately 30 hours researching, preparing, writing and reviewing this report.

1

**ENGAGEMENT**

I have been hired by Richard Goble in this case. My scope of work includes selective review and comment, as appropriate, on North American Clearing's ("NAC") financial statements and financial reports, selective review and comment, as appropriate, on other financial documents created by NAC and third parties, selective review and comment, as appropriate, on documents used as evidence in this case.

In forming my opinions, I relied on documents provided to me by Richard Goble.

I reserve the right to modify, withdraw and/or supplement my report as appropriate.

**REPORT**

In the Trustee's complaint ("Complaint"), the Trustee argued that NAC was "undercapitalized". This and related points were argued in paragraphs 9, 12, 15, 18, 22 and 28. NAC is subject to SEC Uniform Net Capital Rule 15c3-1, which defines minimum required net capital to be equal to the greater of $250,000.00 or 2% of aggregate net debit items ("Minimum Capital"). Using the SEC's Minimum Capital rule as the benchmark to determine whether NAC is undercapitalized, I examined the Focus reports prepared by the Company from May 2006 to April 2008 (Exhibit 2), the months the Trustee's expert considered NAC to be undercapitalized. NAC met the Minimum Capital test in 100% of the months in which it prepared the Focus report. Additionally, in 2007 and during the relevant period of 2008, NAC was profitable. The Company earned a substantial profit of more than $600,000 (per outside trustee prepared K1 of 100% owner Richard Goble) in 2007 (Exhibit 3) and was earning, until it was involuntarily shut down, a greater profit, on a year-over year basis (Exhibit 4), in 2008. Even after incurring wind down expenses for the majority of 2008, NAC still earned an operating profit (per outside trustee prepared K1 of 100% owner Richard Goble) for the full year 2008 (Exhibit 5).

In the Complaint, the Trustee also claimed that NAC "was experiencing financial difficulties . . . and/or incurring debts beyond its ability to pay . . ." or expressed similar sentiments in paragraphs 9, 12, 15, 18 and 31. As stated previously, NAC was profitable in 2007 and through prudent cost controls, NAC's financial system indicated net income was $453,000 through May 2008 despite sales declining by more than 11% and going through liquidation. It can be argued that these results indicate management was acting in a prudent and professional manner in the face of a changing environment. A flexible, rather than a static, management is often of the hallmarks of a well-managed company.

When a company is having financial problems, it often generates cash by delaying payments to vendors and/or employees. These actions can typically be seen on the balance sheet in the form of higher accounts payable. In NAC's case, its accounts payable showed continual reductions, inconsistent with a company that is experiencing extreme financial difficulties, incurring debts beyond its ability to pay or is undercapitalized. Accounts payable were actually lower at May 31, 2008 than at December 31, 2007 (Exhibit 6) and lower at December 31, 2007 than at December 31, 2006. NAC not only funded all of its payrolls in a timely manner, but had the cash to pay unbudgeted employee bonuses and make material loans to employees. It appears, contrary to assertions made, that NAC was not experiencing extreme financial difficulties or incurring debts beyond its ability to pay. NAC reacted to changes in its business and the macro-economic business environment by cutting costs (Exhibit 7), right-sizing its operations and continuing to fulfill its obligations.

In the Complaint, the Trustee argued NAC made payments to Goble, "some or all of which were payments made for personal expenses, return of capital and/or distributions . . .". This and related points were argued in paragraphs 8, 11, 15, 18, 21 and 28. As discussed above, NAC had, per SEC regulations, adequate capital, was profitable and met its obligations in the ordinary course of business; therefore any payments to shareholders, whether characterized as a return of capital or a distribution, were neither inappropriate nor atypical for a closely held company of this size. Further, NAC CFO, Tim Ward, disclosed during a deposition (Exhibit 8) under oath that no expenses in 2007, the first year Mr. Ward was CFO, that were personal in nature were charged against the Company. This was ensured by Mr. Ward's personal review. As this was standard operating procedure for Mr. Ward and NAC in 2008, it can be understood that he did, or would have, scrutinized 2008 expenses to ensure that no expenses that were personal in nature were charged against the Company. For 2007 and 2008, NAC's expenses were reviewed and Mr. Goble's tax return was also adjusted for expenses that could potentially be

4

personal in nature, presumably without any input from Mr. Ward or Mr. Goble, by the Trustee and his representative (Exhibit 9). In making these adjustments, it can reasonably be assumed, as Mr. Goble was not directly interviewed, that these individuals took the most conservative interpretation with respect to every expense reviewed and that following the review, sums equal to or most likely greater than any personal expenses were charged to Mr. Goble and reflected on his K-1. With respect to previous years, Mr. Goble was audited by the Internal Revenue Service for the years 2003, 2004 and 2005. Internal Revenue Service examinations of owners of closely held businesses typically include a special focus on improper deductions within the business. Therefore, it can be reasonably assumed that the Internal Revenue Service closely examined the reimbursements Mr. Goble received from NAC. The end result of the audit for 2003, 2004 and 2005 was no net change and no net penalty (Exhibit 10). Assuming that the Internal Revenue Service is a skilled and competent evaluator of proper deductions and assuming the Internal Revenue Service, in a comprehensive multi-year audit of Mr. Goble, made no net changes; one can assume that Mr. Goble's reimbursements from NAC for these years are materially correct and appropriate. As the late Mr. Gallagher was CFO for the years audited through 2006, it is reasonable to assume that reimbursements, and the associated accounting, were made in a consistent and appropriate manner.

In drawing these conclusions, it is important to note that 1) original copies of the details comprising the expenses were not available, 2) original copies of expense/reimbursement reports were not available and 3) NAC's CFO for the years being discussed through 2006, Mr. Gallagher, has passed away and therefore cannot describe his methodology with respect to Mr. Goble's reimbursements. Therefore, the finding of no net change in taxes due for the years 2003, 2004 and 2005 by the Internal Revenue Service, an independent third party, is highly considered in determining the likely appropriateness of reimbursements by NAC to Mr. Goble.

My overall assessment of NAC is that it was adequately capitalized during the period in question, it was not experiencing financial difficulties or incurring debts beyond its ability to pay. For 2007 and 2008, all payments or reimbursements to Mr. Goble were conservatively accounted for on NAC's books as well as on the K-1's received by Mr. Goble. For earlier periods, especially 2003, 2004 and 2005, the Internal Revenue Service determined Mr. Goble's tax reporting and payments in aggregate were adequate and sufficient, leading to the conclusion that there were no material issues with reimbursements to Mr. Goble.

I declare under the penalty perjury that to the best of my knowledge and belief that the foregoing is true and correct. Executed on the 31th day of August, 2011 in Longwood, Florida.

_____
Anthony Ruben

6