UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD GOBLE and
(RICHARD GOBLE as
Assignee of all claims of
G&G HOLDINGS, INC.
FINANCIAL INDUSTRY ASSOCIATION, INC.
THE GOBLE FAMILY TRUST)

**Plaintiff,**

CASE NO. 6:10-CV-408-PGB-KRS
(Consolidated Lead Case)

vs.

THE UNITED STATES OF AMERICA,
SECURITIES AND EXCHANGE COMMISSION,

BRUCE B. BLATMAN, and
TIMOTHY J. WARD,

SECURITIES INVESTOR PROTECTION CORPORATION,
JOSEPHINE WANG, and CHRISTOPHER LAROSA,

FINANCIAL INDUSTRY TECHNICAL SERVICES, INC.,
HENRY LANGE, and JOHN RIZZO,

**Defendants/**

## RESPONSE TO SIPC'S MOTION TO STRIKE THE NOTICE OF SUPPLEMENTAL AUTHORITY AND JUDICIAL NOTICE DE 186

Plaintiff RICHARD GOBLE, ("GOBLE" "Plaintiff" "me", "I", "my" "assignee" "creditor") proceeding pro se and as assignee of claims and 100% shareholder, creditor, and the sole investor of the FINANCIAL INDUSTRY ASSOCIATION ("FIA"), G&G HOLDINGS, INC.("G&G"), and THE GOBLE FIRST REVOCABLE FAMILY TRUST MAY 13, 1999 ("Trust"), and NORTH AMERICAN CLEARING, Inc.("NACI") and (collectively the "Goble Entities") and proceeding derivatively on behalf of the Goble

Entities, hereby respectfully files this response to Securities Investor Protection Corporation ("SIPC") motion to strike the Notice of Supplemental Authority and Judicial Notice that was submitted pursuant to Federal Rule of Evidence 201 concerning the relevant material findings in the US Bankruptcy Court Orlando Division by the Honorable Chief Judge Karen S. Jennemann on September 29th, 2014. [6:10-CV-151 DE 314 Please See Exhibit A].

### THE SUPPLEMENTAL AND JUDICIAL NOTICE IS PROPER AND IMPORTANT

Facts are very stubborn things and Judgments turn facts into undisputed legal reality. We now find that SIPC, Wang, and LaRosa ("SIPC Group") do not deny filing a materially fraudulent bankruptcy petition and then covering it up later. The problem that SIPC Group has now is that the Judgment submitted in the filed Supplemental Authority and Judicial Notice makes the relevant issues a judicial fact and now it cannot be challenged that the SIPC's Securities Investor Protection Act ("SIPA") Petition filed on July 28th, 2008 was a complete and utter fraud. SIPC did not appeal this thoroughly researched new Judgment.

It was SIPC that brought a complaint in the Bankruptcy Court to try the issue of NACI's financial condition in an attempt to drag this case on resulting in me being financially drained.

The previous trial in this Court and subsequent Judgment and the 11th Circuit decision did not specifically address the issues of NACI's solvency, SIPA Petition Order, and the exparte' Receiver Order. The Trustee and SIPC[1] made this argument during the

---

[1] It was SIPC, Wang, and LaRosa who ordered and funded the Trustee and Carlton Fields to file the adjudged untrue complaint in the Bankruptcy Court immediately after the trial in this Court. On October 22, 2014 the Trustee argued that he and Carlton Fields should be paid now because the current value of NACI did not matter since SIPC will pay them directly. Carlton Fields and the Trustee earned over $2 million for filing and prosecuting this untrue complaint and the Bankruptcy Judge granted the motion for SIPC to pay Trustee and Carlton Fields.

bankruptcy trial and the Honorable Chief Judge Karen S. Jennemann had to make a separate decision which included factually determining NACI's true financial condition, earnings, capital, and use of customer funds.

This Judgment was entered only after the Honorable Chief Judge Karen S. Jennemann thoroughly reviewed all of the submitted testimony and evidence that required almost 4 years of her valuable time to completely discern what was going on with this case and what was the real financial condition of NACI. Because of all of the materially false pleadings by SIPC Group, and the USA/SEC, the Honorable Chief Judge had to personally and thoroughly research every aspect of this case. After the Honorable Chief Judge's thorough and very lengthy review, it is very clear and is now a judicial fact that the USA/SEC, and the SIPC were materially lying this Court, from day one.

Therefore, SIPC Group is now asking this honorable Court to strike the Supplemental Authority and Judicial Notice because it is too wordy and SIPC fears that this Court will not be able to discern the relevant facts addressed in the Supplemental Authority and Judicial Notice for themselves. SIPC even admits that the Supplemental Authority and Judicial Notice was proper, but just contained too much information.

The Local Rules do not prohibit this Supplemental Authority and Judicial Notice so it seems rather strange to file a motion to strike, that will ultimately allow me to respond with even more information concerning why the motion to strike should be denied.

This is no legal reason to strike any Supplemental Authority and Judicial Notice and this honorable Court should deny SIPC's motion to strike.

## THE SIPA'S PETITION ORDER AND SEC'S EXPARTE' ORDER ARE NOW LEGALLY AND TECHNICALLY VOID

When SIPC Group filed their petition for SIPA Protection, they did this with the understanding that they would be liable for any and all of their bad acts under SIPA and under Title 11 U.S. CODE for bankruptcy filings.

Under SIPA Rules, if there are any inconsistencies in the SIPA rules or a procedure, or if a rule is not found in the SIPA Rules, then Title 11 will be the governing Federal Law.

SIPA §78eee (b)2(A): (A) Exclusive jurisdiction specifically and clearly states:

> (iii) except as inconsistent with the provisions of this chapter, shall have the jurisdiction, powers, and **duties conferred upon a court of the United States having jurisdiction over cases under Title 11, together with such other jurisdiction, powers, and duties as are prescribed by this chapter.**
> [Emphasis added]

SIPA also clearly addresses the issue of SIPC filing a petition without proper due process only in this section §78eee (b)(1):

> Unless the debtor consents to the issuance of a protective decree, the application shall be heard three business days after the date on which it is filed, or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require.

Not only did SIPC fail to provide three days' notice but under SIPA Rules, SIPC Group is asking this court to not proceed with the Constitutionally required Due Process when it was SIPC Group that brought this action through their SIPA Petition and under Federal Title 11, Therefore, I am permitted to bring this motion and complaint against the SEC and SIPC under 11 U.S. CODE §110:

> - (3) A debtor, trustee, **creditor**, or United States trustee (or the bankruptcy administrator, if any) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.
> **[Emphasis added]**

SIPC's Josephine Wang and Christopher LaRosa were never permitted to file the SIPA Petition since they claim to be legal representatives of SIPC. SIPC, Wang, and LaRosa should have known better than to file a false SIPA Petition and violate my rights and convert all of my money and assets to themselves.

Under 11 U.S. CODE § 110:

> a) In this section—
> (1) "bankruptcy petition preparer" means a person, **other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney**, who prepares for compensation a document for filing;
> [Emphasis added]

According to the Federal Law Title 11, an attorney cannot file a petition under any circumstances. Based on Wang and LaRosa's claims that they are attorneys and therefore immune, that in itself will make the SIPA Petition invalid and the SIPA Order should be vacated or voided. Wang and LaRosa are now trying hide behind legal privilege.

The Federal Law is clear; that no petitioner can hide behind attorney privilege in order to avoid liability concerning a falsified and untrue petition. The SIPA Rules do not conflict with this legal requirement.

Furthermore, Wang and LaRosa failed to file affidavits asserting that their pleadings were true. This disqualifies the SIPA Petition and SIPA Rules do not conflict with this U.S. Title 11 U.S. CODE § 110 requirement:

> (iii) shall—
> (I) be signed by the debtor and, **under penalty of perjury**, by the bankruptcy petition preparer; and [emphasis added]

All petitions must be signed under penalties of perjury because of the gravity of the actions that are being taken under a bankruptcy filing. Not only did SIPC, Wang, and LaRosa fail to swear under oath for any of their claims in the SIPA Petition, they worked

feverishly to cover up their bad acts in all phases, for the past six years.

These acts by SIPC and Wang and LaRosa are more than enough to legally and technically vacate/void the SIPA Bankruptcy Petition Order and to assert claims against them.

## REMEDY FOR VACATING OR VOIDING THE SIPA PETITION ORDER AND EXPARTE' RECEIVER ORDER

The Federal law concerning the penalty for persons who negligently of fraudulently prepares a bankruptcy petition are clearly addressed in 11 U.S. Code § 110 and these rules do not conflict with SIPA Rules and therefore are the governing Federal Laws that are required to be followed:

## Under 11 U.S. CODE § 110:

**(i)**
(1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor—
(A) the debtor's actual damages;
(B) the greater of—
(i) $2,000; or
(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
(C) reasonable attorneys' fees and costs in moving for damages under this subsection.
(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.
**(j)**
(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
(2)
(A) In an action under paragraph (1), if the court finds that—
(i) a bankruptcy petition preparer has—
(I) engaged in conduct in violation of this section or of any provision of this title;
(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
(III) engaged in any other fraudulent, unfair, or deceptive conduct; and
(ii) injunctive relief is appropriate to prevent the recurrence of such conduct,

the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
**(B)** If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.
**(3)** The court, as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under this section. The injunction under this paragraph may be issued on the motion of the court, the trustee, or the United States trustee (or the bankruptcy administrator, if any).
**(4)** The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorneys' fees and costs of the action, to be paid by the bankruptcy petition preparer.

Therefore, the Federal Law is clear on the remedy and SIPC Group must now pay for the damages it has caused for falsely claiming that NACI was insolvent plus pay all of NACI's Creditors for their damages.

This remedy seems fair and just since it was SIPC Group who falsely claimed that NACI was insolvent and then proceeded to pay all of NACI's customers and forced them to leave without any compensation to NACI, destroyed tens of millions of dollars in developed software and infrastructure, destroyed NACI's clearing license and goodwill, withheld payroll, destroyed over 40 full-time high paying jobs, destroyed the business of over 35 small brokerage firms, and then kept the over $5 million cash dollars remaining in NACI, for themselves.

In reality, SIPC should never be trusted again to unilaterally file an SIPA Bankruptcy Petition without affidavits, and certified financials, and by attorneys' that will improperly claim legal privilege and then refuse to answer for their bad acts.

A motion for an exparte Receiver that is later found to be materially false will fall under the USA's FTCA's rules and since no crime or fraud were committed, as falsely claimed by the USA/SEC's exparte' Receiver motion, the United States representing the

SEC can be held liable for the damages caused by improperly seizing and destroying property, cash, and assets of a private citizen.

## THE FALSE INFORMATION AND FALSE PLEADINGS BY SIPC AND THE SEC JUST NEVER STOPS

SIPC Group and the SEC have been materially lying to this Court since day one, and their creditability now is certainly questionable.

Contrast these acts by the SIPC and SEC with this recent Judgment:

> "For those charges where the business-related nature of the expenses was not readily apparent, **Goble's extremely credible testimony** was particularly helpful in dividing business from personal expenses." [Bankruptcy Court Opinion, Bankruptcy Court Doc. 184-1 at 11]

SIPC then tries to rewrite the submitted Judgment by misrepresenting this tiny portion in the ruling:

> The events of May 2008, which led to SIPC's intervention, were unrelated to whether NACI was properly capitalized in June 2006, or at any point during the next 24 months when the Transfers occurred.
> [Bankruptcy Court Opinion, Bankruptcy Court Doc. 184-1 at 22]

This was a complete misrepresentation of the Judgment by SIPC and the SEC when the new Judgment actually said this:

> The events of May 2008, which led to SIPC's intervention, were unrelated to whether NACI was properly capitalized in June 2006 or at any point during the next 24 months when the Transfers occurred. As Judge Easterbrook of the Seventh Circuit Court of Appeals aptly noted, "[o]ne is tempted to suppose that because a firm failed it must have been inadequately capitalized. That temptation must be resisted." The Trustee has failed to prove that NACI had unreasonably small capital when the Transfers were made. Count I fails. *Id*

In reality, SIPC's Trustee was trying to claim that since the SIPA Petition existed that NACI must have been undercapitalized. This new Judgment's above paragraph was appropriately addressing this false pleading from the Trustee.

Then we find that the new Judgment specifically determines that NACI was never undercapitalized or insolvent, or losing money, as falsely stated by SIPC and the SEC:

> NACI instead satisfied industry regulatory requirements for capitalization imposed by the Net Capital Rule. Rule 15c3-1, the "Net Capital Rule," requires broker-dealers to maintain a certain level of capital reserves.
>
> Goble's expert, Michael Brown, testified that NACI complied with the Net Capital Rule's requirements at all times and never had to issue an "early warning report," a report required by the SEC when a broker-dealer's net capital slips below a certain range. Further, Mr. Brown testified that, based on his expertise in the securities business, the Rule 15c3-1 requirement is more arduous than capital requirements in other industries. Based on Mr. Brown's review, NACI never fell below the net capital level required by Rule 15c3. [Bankruptcy Court Opinion, Bankruptcy Court Doc. 184-1 at 21]

Since it is now a judicial fact that NACI was never insolvent or losing money, how was it possible for SIPC Group to plead that NACI was insolvent? SIPC Group's SIPA Petition motion was just a blatant, material, and egregious lie to this Court and it certainly defies all logic.

Even in their recent pleadings the SEC or SIPC Group falsely accuses me of not providing proper local rule notices, ignoring the actual time line of this case, blames me for the SIPC's and SEC's materially perjured motions, misrepresents the history of this case by ignoring the fact that US Court of Appeals removed all fraud and injunctions in this case, and then tries to find tiny pieces of a largely overturned Judgment that never even thoroughly considered the actual financial condition of NACI.

The rash and blatantly false exparte' motions filed by the SEC and SIPC, ruined and destroyed my companies, left over 40 employees without jobs, and destroyed my life's work and investments, and retirement savings, and now six years later, the SEC and SIPC are trying to sweep this under the rug.

The SEC's completely fabricated story that NACI was strapped for cash and therefore it

was very important for me to aid and abet a minor books and records violation was completely false pleading and now is factually and judicially untrue.

Then we find that the SEC falsely claimed in their exparte' Receiver motion that NACI was illegally using customer cash to pay for operating expenses because NACI was losing money. This new Judgment clearly rules that this claim, by the SEC, is false.

> NACI's account statement contained more than adequate disclosures to customers comply with securities rules. The Trustee failed to prove that NACI used customer funds for improper purposes. [Bankruptcy Court Opinion, Bankruptcy Court Doc. 184-1 at 18 and 19]

This was also upheld by the US Court of Appeals that NACI did not use customer funds improperly. SIPC Group was attempting to retry the old 6:08-CV-829 judgment that determine that customer funds were used for proper purposes.

If NACI did use customer money to pay its operating expenses, that certainly would be an improper use of customer money.

Again we find that it completely defies all logic why the USA/SEC would so blatantly and materially lie in their exparte' Receiver motion by falsely claiming that NACI was losing money and therefore NACI was using customer cash to pay for its daily operating expenses.

This Court could certainly should take judicial notice of these facts.

### THE COURT MAY PROPERLY TAKE JUDICIAL NOTICE OF THE PORTION OF THE FOREGOING BENCH TRIAL OPINION

In the Judgment Opinion, the Honorable Chief Judge Karen Jennemann found that NACI was never in financial decline, was very profitable and growing, had sufficient regulatory capital, and used customer funds only for proper and legal purposes. Specifically, the Honorable Chief Judge Karen Jennemann ruled that:

### Honorable Chief Judge Karen Jennemann's Thoroughly Researched Judgment

"NACI was consistently profitable. The company earned $4,477,513 in revenue in 2006, although advance expenses accrued early for tax reasons resulted in a slight, artificial loss of $339,274.8  By 2007, NACI's revenue had increased to $5,340,493, and its net income improved to a positive $399,951.9  In 2008, NACI only operated from January through May but appeared poised for its most profitable year. The firm earned $1,858,782.55 in total income and $382,095.39 in net income for the five-month operating period in 2008. Based on these figures, **NACI hardly appears to have been on its last legs.  The firm's profitability was increasing year-to-year.**" [6:10-ap-151 DE 314 page 3-4] [Emphasis added]

### "(2) The manual redemptions were proper uses of customer monies."

"Contrary to the Trustee's position, broker-dealers are permitted to use customer funds in certain aspects of their business related to servicing their securities customers. Commingling of customer funds with a broker's cash reserves is commonplace within the securities brokerage industry."

"[W]hen [customers of broker-dealers] leave free credit balances with a broker-dealer the funds generally are not segregated and held for the customer, but are commingled with other assets of the broker-dealer and used in the operation of the business."

"One of the most accepted uses of customer funds within by a broker dealer is funding customers' margin purchases. Goble vociferously testified that the reason NACI manually redeemed customer money market accounts was to fund customer margin purchases – i.e., loan customers money to allow them to purchase securities while charging interest on the money loaned."

"NACI's account statement contained more than adequate disclosures to customers to comply with securities rules. The Trustee failed to prove that NACI used customer funds for improper purposes." [*Id* page 17, 18, 19]

### "(3) NACI's manual redemptions did not violate 17 C.F.R. 15c3-3's obligation for NACI to compute an accurate weekly reserve deposit requirement."

"NACI here properly computed its weekly reserve requirement and presumably made its weekly deposit as required by the rule." [*id* page 19]

"Contrary to the picture painted by the Trustee, NACI was not on its last legs when the Transfers were made." [Id page 21]

"NACI instead satisfied industry regulatory requirements for capitalization imposed by the Net Capital Rule. Rule 15c3-1, the "Net Capital Rule," requires broker-dealers to maintain a certain level of capital reserves."

"Further, Mr. Brown testified that, based on his expertise in the securities business, the Rule 15c3-1 requirement is more arduous than capital requirements in other industries. Based on Mr. Brown's review, **NACI never fell below the net capital level required by Rule 15c3-1.**" [Emphasis added]

"NACI also operated at a profit in 2007, and appeared poised for a very profitable year in 2008. Aside from the Trustee's manual redemption argument, which the Court does not accept, no evidence showed that NACI ever missed payments to creditors or that NACI was in financial distress or "just short of equitable insolvency" throughout the two plus years the Transfers occurred."

"At the time of the Transfers, NACI's bankruptcy never seemed "likely and foreseeable.""

"In April 2008, NACI reported $889,501 in revenue and $175,549 in profit the very month before it was taken over by the SIPC." [*Id* page 21 and 22]

"Although Goble, as sole indirect owner of NACI and member of its board of directors is an insider of NACI, the company was paying its bills on time, was not undercapitalized, received reasonably equivalent value for the Transfers, and did not improperly use, conceal, or remove assets, including customer monies. [Id page 23]"

## FURTHER ANALYSIS

To frustrate due process, the SEC and SIPC withheld and/or destroyed documents making any "show for cause hearing" impossible before the eventual destruction of NACI and the extreme loss to NACI creditors.

The findings of this new Judgment clearly spells out that the motion for an exparte' Receiver and the motion for an SIPA Petition were completely vacant of truthful facts and were 100% based on a fraudulent pleadings and is very relevant to this complaint filed with this Court.

Specifically this recent Judgment Opinion, which was based on a six day bench trial and after thoroughly reviewing all of the relevant financials of NACI, states that:

1. NACI never used customer money for improper purposes.
2. NACI was always properly capitalized and solvent.
3. NACI made all of its regulatory deposits and met all of its regulatory requirements.
4. NACI was growing and very profitable during all relevant times.

Because this is newly discovered evidence, in the form an official Judgment that clearly demonstrates that the factual pleadings, on which the foregoing SEC's exparte' Receiver motion, SIPA Group's SIPA Petition Motion, and subsequent exparte' Receiver Order and the SIPA Application Order are premised, were materially erroneous. I respectfully request that the motion to strike be denied.

Since this new Judgment clearly rules that NACI was never in any financial decline nor in any financial jeopardy as a result, it clearly proves that I did not conspire to do anything wrong that would prevent any reparations from the defendants in the filed complaint.

In discovery and through proceedings in 6:08-CV-829 and 6:10-ap-00151-KSJ, I submit this new Judgment Opinion to this case that will prove that the SEC's emergency motion for an exparte' Receiver or an SIPA Petition were materially not true and that NACI was never in need of an exparte' Receiver or an SIPA Petition. Specifically, I submit that this new Judgment Opinion reveals the following:

1. NACI was always profitable, had more than the required regulatory capital, and was financially growing and headed for its most profitable year.

2. That North American was able to make all of its 15c3-3 deposits and fully complied with all rules in Sections 17(a) and 15(c)(3) and Rules 17a-3 and 15c3-3.

3. NACI was found to have never committed any fraud, never to break any laws, and to have never used any customer money for any improper purposes.

In contrast, the SIPC and the SEC argued just the opposite facts that directly conflict with the opinions of the Honorable Chief Judge. The SEC in their motion for an exparte' Receiver argued that:

> "NACI and its top officers have put customer funds at serious risk by illegally using them to meet an ever-growing cash shortfall in NACI's operations. Each time NACI and its officers have conducted an illegal transaction, they put customer funds at risk because there is no guarantee the firm will be able to generate enough cash from operations to repay the funds." [DE 6 page 4]

Then we see the SIPC argue in an improper unverified SIPA petition that:

> "Specifically, the Defendant is insolvent within the meaning of Section 101 of the Bankruptcy Code (11 U.S.C.) and/or is unable to meet its obligations as they mature; [6:08-CV-829 DE 71 page 2 ¶5 line 4]"

Now we have a new Judgment of the Court, as stated above, which clearly rules the SIPC Petition motion and the SEC's exparte' motions were never true.

This new judicial decision and evidence demonstrates that the exparte' Receiver and SIPA motions, submitted without any affidavits, were never needed and there was never any need for an exparte' Receiver Order or an SIPA Petition Order. Specifically NACI was never insolvent by any means and was never using customer funds improperly.

Certainly now that this new Judgment has shortened the discovery time in this case with its many factual rulings, I should be permitted to amend my complaint to conform to the Honorable Magistrates Judges' Report and Recommendations or a new report and recommendation taking into consideration this new Judgment.

What we find here is an improper seizure of assets, property, and money orchestrated by the USA/SEC and SIPC. Therefore, this new Judgment and supplemental information are extremely relevant to this matter and I respectfully request that this Court deny SIPC's motion to strike.

## CONCLUSION

Based on the factual details of the recent Judgment, it is now a fact that the solvency, profitability, and regulatory compliance of NACI has been decided, it is very clear that the facts detailed in the motion for an exparte' Receiver were never true and that there was never a need for an SIPA Petition bankruptcy.

In addition, the reasons plead by the SEC that violations occurred was because NACI was strapped for cash, are now factually untrue.

Therefore, the Supplemental Information and Judicial Notice are proper and should be seriously considered when this Court decides the pending motions before this Court.

NACI never committed any fraud, never improperly used customer money to fund expenses, and the material reasons given by the SEC and SIPC for an approval of an exparte' Receiver motion and an SIPA Petition, are materially false.

Now that this new Judgment has greatly shortened the discovery time in this case with its many factual rulings, I should be permitted to amend my complaint to conform to the Honorable Magistrates Judges' Report and Recommendations or a new Report and Recommendation taking into consideration this new Judgment.

WHEREFORE the Plaintiff, RICHARD L. GOBLE, respectfully request that this Honorable Court take notice of this Supplemental Authority and the Bench Trial Opinion, and deny SIPC's motion to strike this notice and by granting any such other and further relief that this Honorable Court deems just and proper.

DATED this 27th day of October, 2014.

Respectfully submitted,

/s/ _____ Pro Se
Richard Goble
(Creditor and Assignee of all Claims)

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing on the below service list was furnished via United States first class mail, facsimile, electronic mail, and/or this Court's electronic filing system upon the following interested parties this 27th day of October, 2014:

                                    Respectfully submitted,

                           /s/ _____ Pro Se
                             Richard Goble
                      (Creditor and Assignee of all Claims)

### Service List:

Notice has been electronically mailed to:

| | |
|---|---|
| Bruce William Barnes | bwbarnes@tampabay.rr.com, dmtaylor@tampabay.rr.com |
| Cathy A. Fleming | cfleming@hodgsonruss.com, apoznanski@hodgsonruss.com |
| David S. Mandel | dmandel@mandel-law.com, dcox@gibsondunn.com, pcrespo@mandel-law.com, scavanagh@mandel-law.com, smartin@gibsondunn.com |
| Glennys Ortega Rubin | grubin@shutts.com, rsouza@shutts.com, sbeery@shutts.com, sferguson@shutts.com |
| Kevin Dean Solonsky | solonskykd@sec.gov |
| Mary Ruth Houston | mhouston@shutts.com, rsouza@shutts.com, sbeery@shutts.com, sferguson@shutts.com |
| Matthew Triggs | mtriggs@proskauer.com, crotondo@proskauer.com, etorres@proskauer.com, mthompson@proskauer.com |
| Payal Salsburg | psalsburg@proskauer.com, crotondo@proskauer.com, etorres@proskauer.com, kmolloy@proskauer.com |
| Ralph E. Hopkins | ralph.hopkins@usdoj.gov, orldocket.mailbox@usdoj.gov, usaflm.orl_ecf@usdoj.gov |
| William F. Jung | wjung@jungandsisco.com, Backupdocket@yahoo.com, droberts@jungandsisco.com |
| Timothy Ward | timward_1@yahoo.com> |